UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-6568

JOHNNY R. HUFF,

                Plaintiff – Appellant,

        v.

DANIEL T. MAHON, Warden of Haynesville Correctional Center;
L. A. CORNER, Operations Officer; L. COLLINS, Hearing
Officer,

                Defendants – Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond. Robert E. Payne, Senior
District Judge. (3:04-cv-00882-REP)

Argued: January 27, 2009          Decided: February 24, 2009

Before NIEMEYER, TRAXLER, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Rebecca Kim Glenberg, AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA, INC., Richmond, Virginia, for Appellant.
William W. Muse, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA,
Richmond, Virginia, for Appellees. **ON BRIEF:** Robert F.
McDonnell, Attorney General of Virginia, Richmond, Virginia, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Johnny Huff appeals the summary judgment entered against him on his First Amendment claim. See 42 U.S.C. § 1983. We affirm.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). We review the district court's order granting summary judgment de novo. Jennings v. U.N.C., 482 F.3d 686, 694 (4th Cir.) (en banc), cert. denied, 128 S. Ct. 247 (2007). In doing so, we generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 127 S. Ct. 1769, 1774 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Id. at 1776 (quoting Fed. R. Civ. P. 56(c)).

In January 2004, while incarcerated at Haynesville Correctional Center (HCC), Huff wrote a letter to Gene Johnson,

2

the director of the Virginia Department of Corrections (VDOC), complaining about the prison's purported practice of requiring sick inmates to stand outside in cold weather to receive their medication. Huff sent copies of the letter to various government officials, advocacy groups, and media outlets, as well as to HCC Warden Daniel T. Mahon. In the letter, Huff referred to the "cold, callus, cruel, evil, uncaring, unmercyful, inhumane officials you have left in charge as wardens." J.A. 58. Based on that specific language, Huff was charged with the institutional offense of "vulgar or insolent language directed toward an employee." J.A. 59. Huff was found guilty of that offense in February 2004 and was fined $12.00.

Shortly thereafter, an Institutional Classification Authority (ICA) hearing was held. Based in part on the insolent language charge, the ICA increased Huff's classification from Good Conduct Allowance (GCA) Level II to Level III. As a result, Huff received 10 days of good time for every 30 days incarcerated instead of the 20 days he would have received at GCA Level II. The ICA also recommended that Huff be placed in segregation while awaiting transfer to a higher security institution. Huff remained in segregation until March 9, 2004, when he was transferred to Powhatan Correctional Center. Huff was eventually returned to GCA Level II in August 2005. During the time that he was classified at GCA Level III, Huff earned

3

180 fewer days of good time than he would have earned had he remained at Level II.

Huff thereafter filed this action against several prison officials asserting, inter alia, that they retaliated against him for exercising his First Amendment rights by holding him in administrative segregation, charging and convicting him of an institutional infraction, transferring him to a higher security prison, and increasing his GCA level. Huff seeks compensatory or nominal damages, punitive damages, and declaratory and injunctive relief.

After Huff filed this action, VDOC Director Johnson reviewed the insolent language charge against him. Although Johnson found that "the language contained in Huff's letter was insolent and inappropriate," he concluded that "because [Huff] did not identify Warden Mahon by name, . . . it cannot be determined that the language was directed toward Warden Mahon as required by" the offense code. J.A. 60-61. Huff's $12.00 was returned, but it is unclear whether he was credited with the 180 days GCA that he had lost because he apparently was detained past his mandatory release date pending civil commitment proceedings pursuant to Virginia's Sexually Violent Predators Act.

On cross-motions, the district court granted summary judgment in favor of the prison officials on the First Amendment

4

claim. The court recognized that the First Amendment protects both the affirmative right to speak and the right to be free from retaliation for the exercise of that right, and it noted that the first element that a plaintiff must establish in a retaliation case is that his speech is protected by the First Amendment. The court then extensively analyzed the law pertaining to prisoners' rights under the First Amendment and concluded:

> An inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments. . . . Because the Court finds that the right to direct disrespectful comments toward prison officials in written correspondence is inconsistent with Huff's status as a prisoner, the Court must conclude that Huff did not have a First Amendment right to send written letters to prison officials in which he refers to them as "cold, callus, cruel, evil, uncaring, unmercyful, [and] inhumane." The Court thus finds that Huff's speech was not protected and, therefore, that he has not demonstrated a violation of his constitutional rights.

J.A. 71-72.

On appeal, Huff does not challenge the validity of the VDOC "vulgar or insolent language" policy; indeed, he acknowledges "that a prohibition on vulgar or insolent language directed at employees generally furthers the prison system's interests in discipline, order, security, and civility." Brief of Appellant, at 5. Moreover, Huff does not contend that the prison officials

5

punished him for his grievance generally, rather than for the specific critical language. Instead, Huff contends that the language he used in the letter does not fall within the scope of the policy and, accordingly, is protected by the First Amendment.

Having reviewed and considered the record, briefs, oral arguments, and applicable law, we are persuaded that the district court reached the correct result on Huff's First Amendment claim.[*] Accordingly, we affirm the summary judgment on that claim based substantially on the reasoning set forth in the district court's careful and thorough opinion.

AFFIRMED

---

[*]See generally Shaw v. Murphy, 532 U.S. 223 (2001). In Shaw, the Court reiterated that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Id. at 229. Further, the Court indicated that the pertinent question for a prisoner's First Amendment case is whether the prison regulation, as applied to the prisoner, is reasonably related to legitimate penological interests, and the prisoner must overcome a presumption that the prison officials acted within their broad discretion in order to prevail. Id. at 232.